## PRIORITY OF A FRANCHISE TAX.

Court of Appeals for Cuyahoga County.

CHARLES R. MORLEY v. THE CLEVELAND HIPPODROME
COMPANY ET AL.

Decided, March 9, 1914.

*Taxation—Franchise Tax Does Not Lose its Preference—Where It
Accrues After Appointment of a Receiver—Section 5506.*

A franchise tax accruing after the appointment of a receiver for a cor-
poration is entitled to preference and should be first paid out of
the fund finally realized from a sale by the receiver of the assets
of the corporation.

*Tolles, Hogsett, Ginn & Morley,* for plaintiff.
*R. E. Morgan,* contra.

WINCH, J.; MEALS, J., and GRANT, J., concur.

Appeal from the court of common pleas.

The question in this case is whether a franchise tax accruing
after the appointment of a receiver for a corporation is entitled
to preference and should be first paid out of the fund finally re-
alized from a sale by the receiver of the assets of the corporation.

The question is answered affirmatively by Section 5506, Gen-
eral Code, which provides:

"The fees, taxes and penalties required to be paid by this act
shall be the first and best lien on all property of a public utility
or.corporation, whether such property is employed by the public
utility or corporation in the prosecution of its business, or is in
the' hands of an assignee, trustee or receiver, for the benefit of
the creditors and stockholders thereof."

It is claimed by the creditors of the corporation in this case,
however, that the section quoted intends only that the franchise
tax which accrues *before* the appointment of a receiver shall be
a lien upon its property and be first paid out of the assets thereof
when the receiver disposes of them.  In this connection it is
pointed out that as the tax is upon the right of the corporation

to exercise its franchise and not upon its property and is computed upon its issued and outstanding capital stock, without reference to whether it has any property, the tax would not be a lien upon the property of the corporation unless made so by the statute quoted, for no other law makes it a lien, and from this premise is deduced the conclusion that the sole purpose of the Legislature in enacting said statute was to create this lien and require it to be recognized by assignees, trustees and receivers who take charge of property upon which the tax has already become a lien, but not to create a lien upon the property in the hands of a receiver not exercising the franchise of the corporation, but only conserving its assets until sale thereof.

In this connection it is suggested that only the corporation can stop the accrual of this franchise tax by taking certain steps and filing certain certificates as provided by law, and that neither the receiver nor the creditors can either require such corporate action or themselves stop the renewal of the tax from year to year. It is said that this failure of the Legislature to authorize the receiver or creditors to stop the annual assessment of the tax upon property sequestered for the benefit of the creditors produces a situation so unjust to them, where litigation over the assets and the priority of liens is involved and protracted, that this injustice requires an interpretation to be given to the statute which obviates such injustice.

Answering the latter suggestion first, it is sufficient to say that this injustice should be pointed out to the Legislature and not to the court. If the statute is clear and unambiguous, its mandate is to be obeyed by the court no matter how unjust the result may seem to the creditors. Taxes are a burden in any form, and those who deal with corporations and extend them credit, do so with full knowledge of the right the Legislature has reserved to burden the property of a corporation with taxes, even after its property has passed into the hands of a receiver appointed for the benefit of its creditors. These remarks assume, of course, that the statute under consideration is clear and unambiguous. Let us see if that is so.

If the contention of counsel for creditors is sound and the sole purpose of the Legislature in enacting the statute was to

make the tax a lien upon the corporate property, then the last half of the statute is surplusage and it would have been sufficient to have enacted the first part alone, to-wit:

"The fees, taxes and penalties required to be paid by this act shall be the first and best lien on all property of a public utility or corporation."

Being thus made a lien upon the corporate property, when that property afterwards passes into the hands of an assignee, trustee or receiver, it passes subject to that lien as well as to all other liens lawfully upon the property.

But the Legislature saw fit to say something more and meaning must be given to the additional words, if they mean anything.

Having by other sections required said fees, taxes and penalties to be paid so long as the corporation continues to be a corporation and to have issued and outstanding capital stock, the Legislature first made these fees, taxes and penalties a first and best lien upon all property of the corporation and then, specifying with regard to the corporate property, added: "whether *such* property is employed by the public utility or corporation in the prosecution of its business, or is in the hands of an assignee, trustee or receiver, for the benefit of the creditors and stockholders thereof."

The words "*such* property," here used, refer to the words "property of a public utility or corporation," which appear in the first part of the section.

So the only question remaining in this case is whether property in the hands of a receiver appointed for the benefit of creditors and stockholders of a corporation, is the property of the corporation or of the receiver, or of the creditors and stockholders for whose benefit the receiver was appointed. In other words: Where is the title to corporate property after a receiver has been appointed and taken charge of the property under the orders of a court?

This precise question has been twice answered by the Supreme Court of Ohio.

In the case of *Lafayette Bank* v. *Buckingham,* 12 O. S., 419, on page 424, it is said:

"The appointment of a receiver is only a provisional appointment for the more speedy getting in of the estate or assets, in relation to which the appointment extends, and for the better securing the same for their safety and the benefit of those who may be entitled thereto. A receiver, however, whether appointed by a court, or by a board, as in this case, is the ministerial officer and servant of those from whom he receives his appointment; and he is responsible for the exercise of good faith and reasonable diligence in the discharge of his duties. But it can not be said that a receiver by virtue of his office in any case, nor by the provisions of the statute in this case, becomes vested with the title to the property or assets which he administers. His relation to the property, like that of a constable, sheriff or master in chancery, is merely that of a ministerial officer."

In the case of *Cheney* v. *The Maumee Cycle Co.,* 64 O. S., 205, at page 214, we read:

"The relation of an assignee and receiver to the property of an insolvent debtor is in many respects similar. The one obtains title to and authority and power over the property by reason of the joint act of the debtor and the court; the other obtains like authority by the act of the court alone, *not having the title,* but standing as the ministerial officer of the court, his relation to the property being much like that of a sheriff or master in chancery. *Bank* v. *Buckingham,* 12 Ohio St., 419. His appointment is an equitable remedy, bearing the same relation to courts of equity that proceedings in attachment bear to courts of law, the appointment being treated as an equitable execution. The purpose is to secure the means for satisfying the final order and judgment of the court in the action, and the effect of the seizure is to place the property seized in the custody of the court. "

In the light of these two decisions the Legislature enacted the statute here under consideration, and knowing from them that the "*equitable execution*" levied upon the corporate property by the appointment of a receiver does not divest the corporation of its *title* to said property until sale is made by the receiver under orders of the court appointing him, it provided that the franchise tax required to be paid by the corporation shall be the first and best lien upon "such property," to-wit, the property of the corporation, whether employed by it in the prosecution of its busi-

ness, or in the hands₍of a receiver for the benefit of creditors and stockholders.

The statute thus appears to be clear and unambiguous, requiring no aid from rules of construction invoked by the creditors, and under it the relief claimed by the attorney-general in behalf of the state, to-wit, the payment of the state's claim for the Willis tax for three years during which time the property of the corporation was in the hands of the receiver, must be allowed, to be first made out of the fund realized by the receiver's sale, before the claims of mortgagee or other lienholders are paid.

The result here reached is the same as that reached under a similar statute in the state of New Jersey, where the same questions were raised. *In re West Car Company*, 60 N. J. Eq., 514.

Judgment for the state; see journal.